THE STATE OF FLORIDA EX REL. FRANK MIRA, PLAINTIFF, VS. DANIEL P. SMITH, TAX COLLECTOR, DEFENDANT.

The statute of March 3d, 1883, (Chapter 3416 of the statutes,) enacting in effect that no person shall be licensed to sell intoxicating liquors, wines or beer until he has obtained from the County Commissioners a permit to sell the same, to be issued by them on his application signed by a majority of the registered voters of the election district in which the privilege of selling is to be exercised, and duly proven and published in the manner prescribed, was not repealed by the nineteenth or local option article of the Constitution of 1885, providing for elections to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited in a county, and giving to a majority vote cast in an election district in favor of prohibition the effect to prohibit sales in such district, although the majority of the aggregate vote of a county may be against prohibition; nor has subsequent legislation repealed or rendered it inoperative as to any county in which an election may not have been held under the above article of the Constitution.

This is a case of original jurisdiction.

Motion to quash Alternative Writ.

*The Attorney-General* for Respondent and for the motion.

The only repugnance existing between Chapter 3416, Laws of Florida, and Article 19 of the Constitution, is that both " cannot be in force in the same locality at the same time."   The effect of putting in operation the local option article of the Constitution in any county or election district,

is merely to suspend while in force the provisions of Chapter 3416. The reasoning in Butler & Chapman vs. the State, 25 Fla. Reports, page 347, is conclusive upon this case.

*John E. Hartridge* for the Relator, and *contra* the motion.

This case comes up for a hearing on the motion of the respondent to quash the alternative writ. The ground of the motion being that the alternative writ does not show a compliance with Chapter 3416 of the Laws of Florida.

This brings the question which it was designed to be raised by this mandamus squarely before the Court: Is Chapter 3416 of the Laws of Florida in force, or has it not been repealed by Article 19 of the Constitution?

It is the contention of the relator that Chapter 3416 of the Laws of Florida requiring certain conditions precedent to be complied with before a license to sell liquor can be obtained, ceased to be in operation on the adoption of Article 19 of the Constitution of 1885.

We contend that Article 19 of the Constitution, and Chapter 3416 of the Laws of Florida, cannot be in force at the same time. If every county in the State should hold an election, and every election should result in favor of the right to sell liquor in each county, then it might be said with some reason that Chapter 3416 was still in force; for under such a state of affairs the getting a petition to sell liquor would be in harmony with the existing state of affairs, since liquor could be sold. If, on the contrary, in the elections so held the decision should be adverse to selling liquor, then Chapter 3416 would be repugnant to the existing condition of affairs, since you could not get a license to sell liquor, even though your petition was signed and complied with all of the conditions precedent required in Chapter 3416; for under Article 19, liquors

could not be sold in counties voting dry, under any circumstances, and we would have on the book a statute in force authorizing the sale of liquor upon obtaining the signatures of a majority of the registered voters of an election district to a petition, and yet be confronted with a condition of affairs that absolutely destroyed the effectiveness of the statute.   Clearly, the adoption of Article 19 did away with Chapter 3416.  If Chapter 3416 only applied to those counties in which the sale of liquor was authorized by an election under Article 19, there would be some force in the contention that Chapter 3416 was still in force; for then this chapter would only prescribe the conditions precedent to obtain a license in those counties where the sale of liquor was authorized.   As it stands, however, the operation of Chapter 3416 is not limited to any county, but applies to the whole State.

, As a matter of fact, under Article 19, whenever a county votes for the sale of liquor, licenses are issued upon the payment of the liquor license fee without regard to a petition, while in other counties that have not voted upon the question at all, the sale of liquor is only allowed upon complying with Chapter 3416, and in those other counties where the election resulted against allowing the sale of liquor a license cannot be obtained even after a petition signed as required by Chapter 3416 is presented.  It seems clear from this condition of affairs, that it was the purpose, as it certainly is the effect, of Article 19, to repeal Chapter 3416 and to leave the question solely to the decision of the voters of the several counties, and that where they did not vote at all that the sale of liquor can be had upon the payment of the license fee.

Chapter 3416, by its title, is "An Act to regulate the sale of liquors, wines and beer in the State of Florida by the

Boards of County Commissioners of the several counties."

This act provides that liquors shall be sold in every county in the State upon obtaining a petition in the district in which it is desired to sell liquor, signed by a majority of the registered voters.

Article 19 of the Constitution provides for an election to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited therein, the question to be determined by a majority vote. There can be no question, guided by the light of reason, but that Article 19 is directly in conflict with Chapter 3416. If this be not true, how can you expect to sell liquor in every county in the State, as is provided by Chapter 3416, upon getting the requisite petition signed by the requisite number of voters, when the constitutional amendment, viz., Article 19, expressly prohibits its being sold in any county where the majority of voters are against selling it in that county and permits it to be sold in every county where the majority of the voters are in favor of its being sold, regardless of Chapter 3416? Certainly Article 19 is full and complete legislation upon this subject, and directly repeals Chapter 3416. It is not necessary to resort to implication to reach this result. It does so absolutely and completely in its effect. If you observe Article 19, you nullify Chapter 3416. If you attempt to carry out the provisions of Chapter 3416, you nullify Article 19 when you attempt to sell liquor in a county that has voted dry by reason of a petition signed by a majority of the registered voters. The two cannot exist together, and this being so, the constitutional provision must prevail.

It is a further law governing the Constitution that its provisions are mandatory and not directory. People vs. Lawrence, 36 Barb. (N. Y.), 177; Cooley's Const. Limits, 74–83.

We have seen that from the reasoning which ensues from comparing Chapter 3416 and Article 19 we reduce the idea of both being in existence to an absurdity. Going beyond this, however, we assert as a principle that cannot be denied, that where, either by the Constitution or subsequent statute, the whole subject-matter of a former statute is legislated upon, that upon principles of law, as well as of reason and common sense, the law legislated upon is repealed, even though a repeal in express terms is not stated. Bartlett vs. King, 12 Mass., 537; Cooley on Const. Lim., 73 and 74; 20 Pick. 410.

It is equally well settled that where a subsequent statute which is clearly repugnant to a former one, it necessarily repeals the former one, although it does not do so in terms, and even if the subsequent statute be not repugnant in all of its provisions to a prior one, yet if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original act. Sedgwick on the Construction of Statutory and Constitutional Law, page 104 *et seq.*

We contend, as we have said in the beginning, that the that the Constitution is not only repugnant to a former statute, but evidently, from its language and its spirit, it was designed to prescribe the only rule that should govern in the manner of procuring a license and prescribe the areas in which liquor should be sold. We ask the careful attention of the Court to the position taken. Being sincere in the conviction that a repeal has been worked of Chapter 3416 by Article 19 of the Constitution, we, with that same sincerity of conviction, submit it to this Court.

JOHN E. HARTRIDGE,
Attorney for Relator,

## ADDENDA.

The position before stated is strengthened by the provision in Article 19, wherein it is provided that "intoxicating liquors, either spirituous, vinous or malt, shall not be sold in any election district in which a majority vote was cast against the same at the said election." This pointedly and emphatically repeals Chapter 3416, since the latter provides that in every district where a majority of the registered voters sign a petition, a license to sell liquors shall be granted. The Constitution in terms says that in no district shall this be done. Can anything be plainer? This also supports the other point contended for, viz.: That Article 19 was intended to take the place of and be the only legislation on the question of the sale of liquor.

We desire to further call the Court's attention to the other principle enunciated in the brief.

A statute covering the entire subject-matter of a former, operates not accumulatively by way of substantiation, and therefore impliedly repeals the prior. U. S. vs. Claflin, 97 U. S., 546; Norris vs. Crocker *et al.*, 13th Howard, 429; Eckhoff vs. District of Columbia, 3d Central Reporter, 273; Baw vs. Flynn, 3d Western Reporter, 777; First Southern Reporter, 753.

A later statute covering the same subject-matter and embracing new provisions, operates to repeal the prior act, although the two acts are not in express terms repugnant. People vs. Jachne, 4th Central Reporter, 170; Lydy vs. Lond Island City, 5th Central Reporter, 927.

If a subsequent act makes a different provision on the same subject-matter as a prior one, it operates as a repeal of the former. Connors vs. River Iron Co., 54th Mich., 200–202; Howard vs. Melcher, 4th Mich., 185–189.

RANEY, C. J.   The eleventh section of the general act for the assessment and collection of revenue, approved March 5, 1883, (Chapter 3413 of the statutes) provided that no person should engage in or manage any business, profession or occupation named therein unless a State license should be procured from the Collector of Revenue, such license to be issued on the payment of the amount specified in the section as to any particular profession or occupation; and the same section authorized counties and incorporated cities and towns to impose an additional license tax upon the same business, occupation or profession, but not to exceed fifty per cent. of the State tax.

The same Legislature passed an act (Chapter 3416) which was approved on the third day of the same month, and is entitled :   "An act to regulate the sale of liquors, wines and beer in the State of Florida by the Boards of County Commissioners of the several counties."   Its provisions are : That it shall not be lawful for any person or persons to sell any intoxicating liquors, wines or beer in any election district in any county except upon compliance with the following requirements : Any person wishing to sell the same shall make application to the Board of County Commissioners of the county in which the privilege of sale is desired, at a regular meeting of the board, for a license to sell; such application to be signed by a majority of the registered voters in such election district, as shown by the registration list on file in the office of the Clerk of the Circuit Court at the date of the application ; and the applicant to make affidavit that each and every name or mark affixed to the petition was the act and deed of the party purporting to have signed the same, (which signing must have been in the presence of at least two credible witnesses,) and that there was no fraud, bribery or deception in procuring the signa-

tures or marks. The petition, with the names and marks, has to be published in a prescribed manner for two weeks before the County Commissioners meet to "hear" the petition. No Collector of Revenue shall issue "license" to any person or persons unless "a permit" is presented from the Board of County Commissioners, and said "license," so issued shall contain a provision that the same may be suspended or revoked by the Board of County Commissioners for any of the causes hereinafter set forth. Section 3. It forbids (Section 4) the sale of any liquors, wines or beer to any minor, or to any person in a state of intoxication, and authorizes and directs (Section 5) the board to suspend a license upon affidavit being made by two or more reliable citizens that the dealer has sold any intoxicating beverage to a minor, or to a person in a state of intoxication, and prescribes (Section 6) the practice upon the hearing in such cases. Any person violating the provisions of this act is made amenable to the penalties "now prescribed by law" for selling liquor without a license and to be tried in the same manner, but there is a proviso to this section to the effect that the act shall not apply to the sale of domestic wines by the person making the same.

In State *ex rel.* vs. Brown, 19 Fla., 563, decided in 1883, the 5th and 6th sections of the act were held to be void and unauthorized by the Constitution, in so far as they sought to invest the County Commissioners with judicial power to hear and determine a complaint against the holder of a license and to revoke it, as they created a court not authorized by the organic law ; but that in so far as the act required the applicant for a license to produce to the County Commissioners an application signed by a majority of the registered voters in the election district where it was desired to make sale and to otherwise comply with the terms prescribed, it

was valid. The two acts were as to the matter of liquor licenses held to be in *pari materia*, and not incongruous, but capable of being enforced, barring the unconstitutional provisions mentioned.

In 1885, an amendment, approved February 15th, was made of the above General Revenue Law, but it in no wise affected the liquor provisions of either of the two statutes. Later in the same year, the convention which framed the present Constitution . assembled, which Constitution was ratified by the people in November, A. D. 1886, and went into operation on the first day of January of the following year.

The local option or 19th article of this instrument is to the effect that the Board of County Commissioners of each county in the State shall, not oftener than once in every two years, upon the application of one-fourth of the registered voters of the county, call and provide for an election in the county to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited. therein ; the question to be determined by a majority vote of those voting at the election so called, which election must be held in the manner provided by law for holding general elections. If at any such election a majority of the votes cast in any election district of a county is against the sale of such liquors, they shall not be sold in such district. Such election shall be held within sixty days from the time of the presentation of the application unless thereby it would take place "within sixty days of any State or National election," in which case it shall be held "within sixty days after any such State or National election ;" and· the Legislature is directed to provide "necessary laws to carry out and enforce" this article.

The Legislature of 1887 passed an act, (Chapter 3700, approved June 2d, 1887,) for the "enforcement of the pro-

visions" of this article. Among its provisions are the following : Should a majority of the votes legally cast at any election held as provided in the act, be against selling, then no intoxicating liquors, wines or beer shall be sold in the county until otherwise determined by an election to be held not oftener than once in every two years ; but should the majority of the votes be for selling, then such liquors, wines or beer may be sold in the county until otherwise decided by an election to be held pursuant to the statute, it being provided, however, that such liquors shall not be sold in any election district in which a majority vote was cast against selling. That should it be determined at an election that liquors may be sold in the county, then the person or persons wishing to make sales in any precinct voting in favor of such sales, shall obtain license on paying such tax or taxes as may be prescribed by law for carrying on the business. Any person selling or causing to be sold any liquors in any county voting against the sale of the same therein, is, upon conviction, to be deemed guilty of a misdemeanor and shall be fined or imprisoned, or both fined and imprisoned, as provided in the act.

This Legislature also passed a General Revenue Act, approved June 13, 1887, which is a revision of the General revenue law of 1883, mentioned at the outset of this opinion, and contains similar provisions to those set out in the first paragraph of this opinion. In this act of 1887, the following language also occurs in Section 9, which section takes the place of Section 11 of the act of 1883 : "Dealers in spirituous, vinous or malt liquors shall pay a license tax of four hundred dollars in each county for each place of business ; and dealers paying the same and receiving a license therefor shall be authorized to sell spirituous, vinous and malt liquors, or any of such liquors ; but neither spirit-

uous, vinous nor malt liquors shall be sold, unless said license tax is first paid and a license therefor first taken out. Distillers of spirituous liquors shall pay a license tax of three hundred dollars in each county for each place of business : *Provided*, That no license shall be issued to any person to sell or distill spirituous, vinous or malt liquors in any county or election district where such sale has been prohibited in pursuance of the Constitution and laws of this State." This language down to the proviso, with a substitution, however, of "three hundred," for "four hundred," is to be found in the General Revenue Act of 1883, (Chapter 3413, *supra*,) but not the proviso. The last section of this act repeals expressly the General Revenue Act of 1883, and the amendment thereof with a proviso, however, that the former of these acts shall remain in full force as to all violations of the penal provisions committed previous to the act of 1887.

It is urged by counsel for relator that the above article of the Constitution, repeals, of itself, the act of March 3, 1883. Admitting, expressly, that no election has ever been held under the article to decide whether intoxicating liquors, wines or beer, shall be sold in the county where the relator seeks a license, he contends that the presence of the article in the Constitution does away with the act. In Butler and Chapman vs. State, 25 Fla., 347; S. C. 6, So. Rep., 67, we held, and as we are still satisfied, correctly, that when this Local Option Article is put in operation in any county or election district by a majority vote, it *suspends* during the period of its operation, or until there shall be another election changing the status, all statutes regulating the sale of such liquors, wines or beer, in the county or district. In that case we held, specifically, that the General Revenue Law of 1887, in so far as it authorized the licencing and sale of such

liquors was not *repealed* by the Local Option Article being in operation in any county or district pursuant to an election held thereunder, but that it was only suspended pending the period of such active enforcement of the constitutional provision in such territory. Nothing was said as to the act of March 3, 1883, because under the facts of the case, it was not necessary to mention it.

The purpose of the Local Option Article was to remit to the registered voters of each county, the settlement of the issue, whether the sale of intoxicating liquors, wines or beer, should be prohibited within the county. It gives to one-fourth of the registered voters of any county the right to require an election to be held once in every two years to test the sentiment of the voters upon this question. The only issue presented by the constitutional provision is whether or not the sale shall be prohibited. Until an election has been held, and a majority of the electors of a county or of some election district thereof have voted against the sale, the prohibitory provisions of the article and the statute enforcing it, are inoperative throughout the county. If the majority of the voters in the county or in any election district thereof, express themselves through their ballots, as in favor of prohibition, the result is that the sale of such liquors, wines and beer, becomes forbidden and illegal until this condition shall be changed by a subsequent election at which a majority shall vote in favor of permitting their sale; or in other words, shall vote against prohibition; and there can be no subsequent election within two years from the first one, but after two years have elapsed from the time of one election, there may, whatever may have been its result, be another if one-fourth of the registered voters of the county shall see fit to apply to the County Commissioners for it. Whenever the article is in force or active

operation throughout a county, or in an election district, the power of the Legislature to license or otherwise regulate the sale of intoxicating liquors, wines or beer, therein, is suspended, for, in the nature of things, the power to license or otherwise regulate a subject, necessarily implies the existence of the subject; but there is in this article, considered of itself, or in it, and the fact that a vote has been taken resulting in a majority against prohibition, nothing that limits the power of the Legislature to regulate the sale. An election considered solely with reference to what is contained in the article of the Constitution does not involve any expression of opinion or direction as to how the sale shall be regulated in case the vote should be against prohibition.

The article is, as to any county or election district in which it is not actually operative through an election resulting in favor of prohibition, not a limitation upon the power of the Legislature further than the rules it prescribes for calling and conducting an election upon the issue of prohibition and the resulting effect given by it to a majority vote in favor of prohibition. It says nothing as to the regulation of the sale of intoxicating liquors, wines or beer, in any county or district where it has not been put in force; in other words, it is not a regulation of the sales of these intoxicants, and was never intended as such, but only as a provision for submitting the issue of prohibition or sale, and declaring the effect of a majority vote in favor of prohibition in a county or election district. As to any locality in which it is not in actual force by virtue of a majority vote, the Legislature is as free to prescribe regulations of the sale, as it would be if no such article or provision was to be found in the Constitution. Of course, the article is no more in force in a county or district where a majority of

the electors have voted against prohibition, than in one where no election under it has ever been held. Not being a regulation of the sale of the intoxicants where sales are permitted, but merely a regulation of the mode of ascertaining the public sentiment of a county or election district, as represented by a majority of registered voters, as to whether the sale of such intoxicants shall be prohibited, and a declaration of the effect of a majority vote cast in favor of prohibition, it cannot be regarded as superseding or as intended to supersede any existing regulation of sales. It does not pretend to regulate sales where the sale of such intoxicants is allowed; that is not its object, and not being its object, it can have no effect upon a statute of which such is the object. U. S. vs. Claflin, 97 U. S., 546. There is no repugnancy in a statutory regulation which says that any person may sell intoxicants in an election district after having obtained a petition signed by a majority of the registered voters, and published the same, and a constitutional provision or statute which says that no person shall sell any such intoxicants at all if at an election, called in the manner provided, a majority of the registered voters express themselves against any sale of them. State *ex rel.* vs. Palmes, 23 Fla., 620; Potter's Dwarris, pp. 113, 114 and 154, *et. seq.* The purpose of the latter is to prohibit altogether that which would otherwise be permitted, whereas the object of the former is to prescribe the rules under which what is permitted may be done.

The repugnancy necessary to work a repeal by implication is one that is clear and positive; State ex rel. vs. Palmes, *supra;* and we are satisfied, after the most careful consideration, that there is no such repugnancy to be found between the act of March 3, 1883, and the Constitution. The fact that no sale could be made in any election district

when the article of the Constitution has not been put in force, if a majority of the registered voters should refuse to sign a petition for any one, and that thereby prohibition may in fact be enforced under the statutory system does not change the character of this statute as one regulating sales. A failure to comply with any prerequisite, whatever it might be, would lead to the same result. The purpose and effect of this statute as a regulation are, it is true, that no person shall sell unless he shall have, in effect, the certificate of a majority of the registered voters of the district that he is personally fit to be entrusted with the conduct of the business of a liquor-dealer, but its purpose and effect are also that any person may sell who shall secure such certificate and publish the same in the manner prescribed, and pay the tax and fee required by the General Revenue Law. State *ex rel.* vs. County Commissioners of Sumter County, 22 Fla., 1. It is a part of the statutory regulation of the sale of intoxicating liquor, the other features of the regulation being prescribed by the revenue act, which two acts, it has been held, are to be construed in *pari materia*. State *ex rel.* vs. Brown, 19 Fla., 563, 595. The statutory system contemplates sales by persons who comply with the regulations of the two acts, but the purpose of the Constitution is to prohibit sales by any person under any regulations whatsoever. One prescribes the qualifications and conditions for selling, the other prohibits all sales of intoxicating liquors, wines or beer.

The second section of the act for enforcing the prohibition article of the Constitution, is as follows: " If such county at such an election votes in favor of the sale of such liquors within such county, then any person or persons in any precinct which at said county election voted in favor of the sale of such liquors, paying the proper license tax to

the proper officer in said county, shall have granted to him proper license for selling such liquors in such precinct." There is, of course, nothing in this indicating that the Legislature regarded the act of March 3, 1883, as having been repealed by the Constitution, nor is there in the former statute, or in the General Revenue Law of the same year, *supra*, anything that can be held to repeal the act of March 3, 1883.

The motion to quash is granted.