Randy Miller Executive Director, Department of Revenue Tallahassee
QUESTION:
Are Florida documentary stamp taxes imposed by ch. 201, F. S., due and owing on the promissory notes described in the three situations presented in the following statement of facts?
SUMMARY:
Until judicially or legislatively clarified or determined to the contrary, promissory notes, nonnegotiable notes, written obligations to pay money, or assignments of salaries, wages, or other compensation which have not been made, executed, delivered, sold, transferred, or assigned, within the purview of s. 201.08, F. S., in Florida appear to be beyond the taxing power of this state. Conversely, promissory notes, nonnegotiable notes, written obligations to pay money, or assignments of salaries, wages, or other compensation which have been made, executed, delivered, sold, transferred, or assigned, within the purview of s. 201.08 in Florida are within the taxing power of this state.
STATEMENT OF FACTS:
A Florida lending institution receives an application for a loan from an out-of-state borrower and, after approval of the loan, the Florida lender sends a letter of commitment to the out-of-state borrower setting forth the terms and conditions of the loan. The out-of-state borrower signs acceptance of the letter of commitment and returns it to the Florida lender. The out-of-state borrower is given written notice of the final approval of the loan by the Florida lender. A Florida attorney, representing the Florida lender, contacts an out-of-state attorney and notifies him of the loan approval and mails a check drawn on a Florida bank, payable to the borrower and the out-of-state attorney for closing. Appropriate notes and other documents are prepared by the out-of-state attorney and the loan is closed out of state, i.e., moneys are advanced to the out-of-state borrower by the out-of-state attorney representing the lender, the notes and other documents being signed outside the state by the borrower. The notes and other documents are then sent to the Florida lender, and all payments the made by the borrower to the Florida lender in Florida.
An out-of-state borrower makes application for a loan to a Florida lender; the loan is approved by the Florida lender. Appropriate loan papers and notes are prepared in Florida and forwarded to an out-of-state attorney representing the lender, along with a check drawn on a Florida bank payable to the out-of-state attorney and the borrower. The note and other documents are signed outside the state, and the funds are advanced by the out-of-state attorney to the borrower. The signed notes and other documents are returned to the Florida lender, and the Florida lender assigns an account number and schedules the notes in its records in Florida. The Florida lender then forwards the original note to an out-of-state service center for safekeeping, retaining a copy of the note. The note is made payable in Florida to the Florida lender, and all payments are made to the Florida lender in Florida. When the note is paid, the original note is returned to the Florida lender for cancellation by the service center and the canceled note is returned to the out-of-state borrower.
An application is made to a Florida lender by an out-of-state borrower for a floor plan loan to secure loans on vehicles held outside the state of Florida by the out-of-state borrower. The loan is approved in Florida by a Florida lender, or if the loan amount is beyond the Florida lender's authority, the loan is approved by the home office of the Florida lender in another state. Notes and other loan documents are drawn in Florida and transmitted to the out-of-state borrower for signature. The documents are signed outside the state by the out-of-state borrower. After execution, the documents are returned to the Florida lender and are held in Florida. The notes are payable in Florida, and payments are made to the Florida lender in Florida. The Florida lender notifies the vendor of the vehicles and the out-of-state home office of the loan approval. The vendor of the vehicle notifies the lender's out-of-state home office of the vehicle delivery date and funds are provided pursuant to the loan agreement from the out-of-state lender's home office to the out-of-state vendor. The Florida lender monitors the status of the loan account and, if increased lines of credit pursuant to the floor plan are approved, the Florida lender mails supplemental notes to the out-of-state borrower for signature; and, after signature, when returned to the Florida lender, the Florida lender notifies the out-of-state vehicle vendor and the Florida lender's out-of-state home office of the increased line of credit.
Before answering your question, it should be understood that the answers contained herein are based solely upon the factual situations presented. In addition, I am specifically receding from my predecessor's opinions in AGO's 058-106, 060-82, 060-162, 062-11, and 065-76, insofar as they would mandate a conclusion different from the one herein contained.
The essential issue is whether Florida has the jurisdiction to tax the promissory notes described in the above factual situations. Since the statutes and laws of a state do not operate beyond its jurisdictional limit, the taxing power of a state is limited to persons, property, and transactions within and subject to its jurisdiction. See 84 C.J.S. Taxation s. 11.
Section 201.01, F. S., specifies the documents subject to the documentary stamp tax which are `written or printed by any person who makes, signs, executes, issues, sells, removes, consigns, assigns, records, or ships the same, or for whose benefit or use the same are made, signed, executed, issued, sold, removed, consigned, assigned, recorded, or shipped in the state.' Section201.08, F. S., imposes a tax `[o]n promissory notes, nonnegotiable notes, written obligations to pay money, or assignments of salaries, wages, or other compensation made, executed, delivered, sold, transferred, or assigned in the state.' Although these sections must be construed together in order to arrive at the intent of the Legislature, Gay v. Inter-County Tel. Tel. Co.,60 So.2d 22 (Fla. 1952), it is a well-established rule of statutory construction that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. See Adams v. Culver,111 So.2d 665 (Fla. 1959), and 30 Fla. Jur. Statutes s. 121. Therefore, the specific terms of s. 201.08 directed to the documentary stamp tax placed on promissory notes, written obligations to pay money, assignments of wages, etc., will prevail over the more general provisions of s. 201.01 in determining whether the transactions in question are subject to tax under s.201.08.
The nature and incidence of the Florida documentary stamp tax has been considered by many of the courts in this state. In State v. Gay, 90 So.2d 132 (Fla. 1956), the Florida Supreme Court held that the Florida documentary stamp tax `is more nearly of the nature of a transaction tax that is imposed upon the particularly described transactions when they occur within the limits of this state.' The court further adopted as a guide to its decision the opinion of a three-judge federal court in Graniteville Mfg. Co. v. Query,283 U.S. 376 (1931). The court then adopted the language used by Chief Justice Hughes in the Graniteville decision to refer to the Florida tax as a `tax levied in relation to an act done within the state in making an instrument.' See also Plymouth Citrus Growers Ass'n. v. Lee, 27 So.2d 415 (Fla. 1946), and Rainey v. Department of Revenue, 354 So.2d 387 (1 D.C.A. Fla., 1977), cert. denied, Department of Revenue v. Rainey, 360 So.2d 1248 (Fla. 1978).
The words `made,' `executed,' `sold,' and `assigned' are used in both ss. 201.01 and 201.08, F. S.; the words `signed,' `issued,' `removed,' `consigned,' `recorded,' and `shipped' are used in s.201.01, but not in s. 201.08; and the words `delivered' and `transferred' are used in s. 201.08, but not in s. 201.01. Thus, under the above principle of statutory construction, the specific terms of s. 201.08 must be followed to determine whether the promissory notes in question were `made, executed, delivered, sold, transferred, or assigned in the state.'
Based on the foregoing authority, it is my opinion that no documentary stamp tax is due under s. 201.08, F. S., on the promissory notes described under the first factual situation above. Although the facts set forth indicate that a Florida lending institution receives in Florida an application for a loan from an out-of-state borrower and approves the loan within the state, the facts further show that the promissory note was made, executed, and delivered outside Florida and was not sold, transferred, or assigned in this state. In short, no single one of the particularly described transactions set forth under s. 201.08
took place within the limits of the State of Florida. Therefore, the notes appear to be beyond the taxing power of this state.
Likewise, the promissory note arising out of the transactions outlined under the second situation do not appear to be subject to tax under s. 201.08, F. S. Although the facts show that the transaction in question involves significant contacts with Florida, the primissory note was not `made, executed, delivered, sold, transferred, or assigned in the state' as required by s.201.08.
The facts outlined in the third situation indicate that after the notes are signed and executed outside the state by the out-of-state borrower, they are `delivered' to the Florida lender in this state. `Delivery' means the voluntary transfer of possession, under the Uniform Commercial Code. See s. 671.201(14), F. S.; U.C.C. s. 1-201(14); and 6 Fla. Jur.2d Bills and Notes s. 147. Assuming that `delivery' of the notes occurs in Florida, then Florida would have the jurisdiction and power to tax the notes, since `delivery' is one of the particularly described circumstances under s. 201.08, F. S., which brings a document within the taxing power of this state.
Prepared by: Joseph C. Mellichamp III, Assistant Attorney General